IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AA SALES & ASSOCIATES, INC., )
)
Plaintiff, )
)
v. ) No. 06 C 4636
)
CONI-SEAL, INC., )
)
Defendant. )

MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Coni-Seal, Inc.'s ("Coni-Seal") motion for summary judgment. For the reasons stated below, we grant Coni-Seal's motion for summary judgment.

BACKGROUND

Plaintiff AA Sales & Associates, Inc. ("AA Sales") alleges that it is a sales representative for Coni-Seal, a manufacturer of automotive parts. AA Sales claims that it entered into a contract with Coni-Seal in 1987 ("1987 Contract") that established a commission-based payment system for accounts that were approved by Coni-Seal. AA Sales contends that the 1987 Contract states that Coni-Seal "agrees

1

to pay AA Sales a commission of six (6) per cent on all products sold to approved accounts." (Comp. 19).

AA Sales contends that it began calling on AutoZone around 1994, and that, after many years of sales efforts, AutoZone bought products from Coni-Seal in 2004 for AutoZone's facilities in Mexico and the United States. In order to help secure the AutoZone business, AA Sales allegedly agreed to accept a reduced commission of three percent. AA Sales claims that it also began calling on Advance Auto Parts in the early 1990s, and that because of its efforts, Coni-Seal sold products to Advance Auto Parts in the late 1990s. In order to help secure the Advance Auto Parts business, AA Sales allegedly agreed to accept a reduced commission of four percent. Further, AA Sales contends that in the late 1990s, it agreed to a reduced commission on all other national accounts it had obtained for Coni-Seal in exchange for relief from responsibility of those accounts. In addition, AA Sales contends that in 1995, Coni-Seal and AA Sales entered into an agreement ("1995 Agreement") that called for AA Sales to receive a two percent "override" on sales by Coni-Seal to all Illinois customers and $1,700.00 per month for all sales from Coni-Seal to Unicor. In exchange for these payments, AA Sales would allegedly cease making sales calls in Illinois and to Unicor. AA Sales contends that Coni-Seal has not paid AA Sales any commissions on the AutoZone, Advance Auto Parts, and other accounts.

AA Sales brought the instant action and includes in the complaint a breach of contract claim (Count I), a claim alleging a violation of the Illinois Sales Representative Act ("ISRA"), 802 ILCS 120/1, *et seq.* (Count II), and a Declaratory

Judgment Act, 28 U.S.C. § 2001, *et seq.*, claim (Count III). Coni-Seal moves for summary judgment on all claims.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id*. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Breach of Contract Claim (Count I)

Coni-Seal moves for summary judgment on the breach of contract claim. To establish a claim for breach of contract under Illinois law, a plaintiff must establish: "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to the plaintiff." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (citing *Hickox v. Bell*, 552 N.E.2d 1133 (Ill. App. Ct. 1990)); *see Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 986-87 (7th Cir. 1999)(noting that in a diversity case we apply federal procedural law and state substantive law)(citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). In the instant action, both Coni-Seal and AA Sales agree that a valid and enforceable contract existed. The parties disagree, however, on the interpretation of the 1987 Contract and whether Coni-Seal breached the 1987 Contract.

    A. Contract Interpretation

Contract interpretation is particularly suited for disposition on summary judgment. *Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir. 1988). *Id.* The first step in interpreting any contract is determining whether the contract is ambiguous. Whether or not an ambiguity exists in a contract is a question of law for the court to determine. *Vill. of Glenview v. Northfield Woods Water & Utility Co., Inc.*, 576 N.E.2d 238, 244 (Ill. App. Ct. 1991). When determining whether a contract is ambiguous, the terms of the contract should be given their natural and ordinary meaning. *Dribeck Importers, Inc. v. G. Heileman Brewing Co. Inc.*, 883 F.2d 569, 573 (7th Cir. 1989). A contract is intrinsically ambiguous, or internally unclear, when it is "reasonably and fairly susceptible to more than one meaning." *The Home Ins. Co. v. Chicago and Northwestern Transp. Co.*, 56 F.3d 763, 768 (7th Cir. 1995)(quoting *Lenzi v. Morkin*, 452 N.E.2d 667, 669 (Ill. App. Ct. 1983)). A contract can also be extrinsically ambiguous if it is clear on its face but, when understood in the real-world context, anyone "would know that the contract means something other that what it seems to mean." *Id.* (citing *AM Int'l, Inc. v. Graphic Mgmt. Assoc., Inc.*, 44 F.3d 572, 575 (7th Cir. 1995)).

When a contract is extrinsically ambiguous, only "objective" evidence is permissible, which is evidence "that can be supplied by disinterested third parties," such as evidence of custom or usage of the trade. *AM Int'l*, 44 F.3d at 575. "Subjective" evidence, which consists of the parties' testimony as to what they believe the contract means, is inadmissible because it is "invariably self-serving" and "inherently difficult to verify." *Home Ins. Co.*, 56 F.3d at 768. Further, language in

5

a contract is not deemed ambiguous simply because the parties disagree as to its meaning. *Id.* (citing *Fed. Deposit Ins. Corp. v. W.R. Grace & Co.*, 877 F.2d 614, 621 (7th Cir. 1989)). When a contract is unambiguous, no disputed question of fact exists and summary judgment is proper. *Ebert v. Dr. Scholl's Foot Comfort Shops Inc.*, 484 N.E.2d 1178 (Ill. 1985).

 1. Sold

 The parties disagree as to whether the 1987 Contract required AA Sales to be the procuring cause of final sales to customers or whether AA Sales is entitled to commissions for all sales made to customers even if AA Sales was not involved in the final sale. Paragraph three of the 1987 Contract states that Coni-Seal "agrees to pay AA Sales a commission of six (6) per cent on *all products sold* to the approved accounts." (Compl. Ex. A)(emphasis added). Paragraph five, which determines the amount of commissions paid to AA Sales if the contract is terminated, further states that Coni-Seal will pay AA Sales a commission of six percent "on all accounts that had been previously *called on* and *sold* by AA Sales." (Compl. Ex. A)(emphasis added). As such, the fact that the contract distinguishes between the terms "called on" and "sold" makes clear that, under the terms of the 1987 Contract, AA Sales must actually make sales to customers, rather than merely making contact with customers. *See Grinnell Mut. Reinsurance Co. v. LaForge*, 863 N.E.2d 1132, 1139 (Ill. App. Ct. 2006)(stating that if terms in a contract "have identical meanings, the clause is redundant and thus offends the well-settled principle of contract

construction that the provisions of a contract shall not be interpreted in a way that renders other provisions meaningless").

In addition, the custom in the trade supports this interpretation. Pursuant to Local Rule 56.1, AA Sales admits that sales representatives are customarily paid commissions based on the products that the sales representatives sell and for maintaining the customers. The usage of the term "sold" in the industry means that in order to receive sales commissions, a sales representative must either call on a customer and make a sale or that a sales representative must maintain continuing relations with the customer where ongoing sales occur. If a customer does not purchase a product when called upon or if a sales representative does not maintain an account and sales flow from the customer, then a sales representative is not entitled to a commission. Finally, the undisputed evidence shows that the term "sold" was not orally modified by the parties. Since the contract is unambiguous as to whether AA Sales must be responsible for a sale in order to receive commissions, we need not determine the intentions of the parties at the time of contracting. *Cf. Grubb & Ellis Co. v. Bradley Real Estate Trust*, 909 F.2d 1050, 1056 (7th Cir. 1990)(noting that the court need not decide whether a sales agent must procure a sale in order to be paid if the agreement unambiguously provides for a commission under any circumstances). Therefore, the 1987 Contract is neither intrinsically ambiguous nor extrinsically ambiguous and in order for AA Sales to receive a commission, AA Sales must have actually sold products to customers or maintained relationships with customers that resulted in product sales due to the efforts of AA Sales.

## 2. Oral Modification

AA Sales contends that the 1987 Contract was modified by the 1995 Agreement, which provided that AA Sales would be due an "override" fee for promising not to solicit either Illinois customers or Unicor. (SOF 67-76). Under Illinois law, the parties can modify an existing contract as long as the parties "*agree to alter a contractual provision or to include additional obligations, while leaving intact the overall nature and obligations of the original agreement.*" *Schwinder v. Austin Bank of Chicago*, 809 N.E.2d 180, 189 (Ill. App. Ct. 2004)(emphasis added). Coni-Seal claims that the 1987 Contract was not modified by the 1995 Agreement. We agree. The undisputed evidence shows that the 1995 Agreement was merely an additional contract which provided that AA Sales would be provided a two percent "override" on sales by Coni-Seal to all Illinois customers and a monthly payment to AA Sales from Coni-Seal in the amount of $1,700.00. In exchange for these payments, AA Sales agreed to cease making sales calls in Illinois and to Unicor. AA Sales admits, pursuant to Local Rule 56.1, that the parties did not view the 1995 Agreement as a modification of the 1987 Contract. Rather, the 1995 Agreement is a separate agreement between the parties with new obligations for the parties. In addition, the 1987 Contract, as noted above, requires AA sales to either make actual product sales to customers, or maintain accounts which result in sales of products to customers. Further, there is no evidence presented by either party that suggests that

the sales term was modified by the 1995 Agreement. Therefore, we find that the 1987 Contract was not modified by the 1995 Agreement.

      3. <u>Products</u>

AA Sales claims that the 1987 Contract requires Coni-Seal to pay commissions on all products, "not just automotive brake parts, but chassis parts and any other products," including truck brake parts. (Ans. 15). Coni-Seal claims it must only pay commissions for the sale of automotive brake parts. The Illinois courts apply the "four corners" rule in determining the ambiguity of a contract and, "if the language of a contract appears to admit of only one interpretation the case is indeed over." *AM Int'l*, 44 F.3d at 576. Applying the above standards to the 1987 Contract and viewing the 1987 Contract in light of its contents, the court finds that the contract is unambiguous as to the type of products that must be sold in order for AA Sales to receive a commission. The subheading on the 1987 Contract clearly reads in bold, "AUTOMOTIVE BRAKE PARTS," which was the only product offered by Coni-Seal at the time the 1987 Contract was adopted. (Compl. Ex. A). As such, the contract between the parties required Coni-Seal to pay commissions to AA Sales for any automotive break parts that AA Sales sold and Coni-Seal, under the terms of the 1987 Contract, is not required to pay AA Sales commission based on the sale of chassis parts or other products. The court need not determine whether "automotive brake parts" also refers to truck parts since such a determination is immaterial. In addition, as noted above, the undisputed evidence shows that the

1987 Contract was not orally modified to include the terms of the 1995 Agreement. Therefore, we find that the 1987 Contract refers to the sale of brake parts rather than all products.

### 4. Geographic Region

AA Sales contends that the geographic region covered by the 1987 Contract includes worldwide sales, rather than merely sales within the United States. Applying the standards relating to contract interpretation to the 1987 Contract, the court finds that the contract is unambiguous. The 1987 Contract is not intrinsically ambiguous or extrinsically ambiguous. When the terms of the 1987 Contract are given their natural and ordinary meaning, it is clear that under paragraph one of the 1987 Contract, AA Sales may receive commissions for sales made to all customers, not just those customers located in the United States. Paragraph one states that AA Sales was appointed as a "National Accounts Representative" and that AA Sales "will act as the exclusive agent for Coni-Seal on selected accounts." (Compl. Ex. A). The fact that the contract allowed for Coni-Seal to act as a sales representative for "selected accounts" opened the door for Coni-Seal to allow AA Sales to make sales to, and receive commissions for, customers outside of the United States. Therefore, we find that the 1987 Contract required Coni-Seal to pay commissions to AA Sales if AA Sales actually sold brake parts to customers or maintained relationships with customers outside of the United States that resulted in brake part sales.

## B. Breach of Contract

Coni-Seal argues that it is entitled to summary judgment as to the breach of contract claim because the 1987 Contract was not breached.

### 1. AutoZone Accounts

AA Sales argues that Coni-Seal breached the 1987 Contract by failing to pay sales commissions for five years after the contract was terminated, pursuant to paragraph five of the 1987 Contract, because AutoZone purchased products for its facilities in the United States and Mexico from Coni-Seal due to AA Sales' long-term solicitation of AutoZone. However, the undisputed evidence shows that even though AA Sales solicited AutoZone in the United States, no sales resulted from AA Sales' repeated efforts to sell products to AutoZone. In addition, the undisputed evidence establishes that all sales to AutoZone in Mexico were due to the efforts of contacts between AutoZone employees and Coni-Seal employees rather than the efforts of AA Sales. (SOF 54); (R SOF 51-56 ). Further, AA Sales admits that it was not responsible for selling to AutoZone in Mexico, did not maintain a relationship with AutoZone in Mexico to sell products, and that AA Sales hardly visited Mexico. (SOF 31); (R SOF 30-32). Also, the products sold to AutoZone in Mexico were not brake parts and did not fall under the terms of the 1987 Contract. Finally, AA Sales' contentions that its repeated efforts to solicit AutoZone caused AutoZone to buy products from Coni-Seal is mere speculation and not supported by the evidence. *See Davis v. Carter*, 452 F.3d 686, 697 (7th Cir. 2006)(stating that

"when the evidence provides for only speculation or guessing, summary judgment is appropriate"); *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)(holding that evidence leading only to speculation cannot be a defense to summary judgment). Therefore, the undisputed evidence shows that AA Sales was not involved in any purchases by AutoZone from Coni-Seal.

AA Sales contends that it should still receive commissions based on Coni-Seal's sales to AutoZone notwithstanding the fact that AA Sales was not involved in any sales to AutoZone. However, AA Sales' argument is not supported by the 1987 Contract and unreasonable. Such an interpretation would open the door for any sales representative ever assigned to an account to bring a lawsuit and demand commissions for all sales to a customer, even if the sales representative did not perform any labor to obtain the sale. Further, under Illinois law, a person "'may be entitled to commission on sales made after termination of a contract if that party procured the sales through its activities prior to termination.'" *Hammond Group v. Spalding & Evenflo Cos.*, 69 F.3d 845, 850 (7th Cir. 1995)(quoting *Scheduling Corp. of Am. v. Massello*, 503 N.E.2d 806, 809 (Ill. App. Ct. 1987)). The undisputed evidence shows that there is no meaningful tie between AutoZone's purchases from Coni-Seal and AA Sales' unsuccessful efforts. Therefore, based on the above evidence, no reasonable trier of fact could find other than that Coni-Seal did not breach the contract with AA Sales as to any sales by Coni-Seal to AutoZone.

2. Advance Auto Parts Account

Coni-Seal argues that it is entitled to summary judgment as to any commissions owed by Coni-Seal to AA Sales based on sales made to Advance Auto Parts. Coni-Seal has pointed to evidence that it does not owe any money to AA Sales as to Advance Auto Parts. AA Sales responds in its answer memorandum that "AA Sales is entitled to commissions on sales to Advance Auto Parts" and "[f]or this reason . . . Coni-Seal's motion should be denied." (Ans. 14-15). However, AA Sales fails to point to any evidence to support its claim. Discovery deadlines have long since passed, and AA Sales' speculation is not enough to show that Coni-Seal did not pay AA Sales the requisite commissions. To allow a party's speculative claims to survive summary judgment based on this evidence alone would allow liability "virtually without limit." *Celex Group, Inc. v. The Executive Gallery, Inc.*, 877 F. Supp. 1114, 1125 (N.D. Ill. 1995)(granting summary judgment where the plaintiff did not even "attempt[] to identify any specific third parties with whom it had a reasonable business expectancy" but rather relied on "past and present corporate executive customers" as an "identifiable class" and finding that during the summary judgment stage a plaintiff "must come forward with its evidence and identify particular third parties with whom it had a reasonable expectancy of entering into business"). The fact that AA Sales believes, without presenting any support for its contention, that Coni-Seal failed to pay commissions based on possible sales by Coni-Seal to Advance Auto Parts is not evidence that Coni-Seal breached the 1987 Contract. *See Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003)(stating that "summary judgment 'is the put up or shut up moment in a lawsuit,

when a party must show what evidence it has that would convince a trier of fact to accept its version of events'")(quoting *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). AA Sales offers no additional evidence from which it may be inferred that AA Sales is owed commissions and this court is not "obliged in our adversary system to scour the record looking for factual disputes. . . ." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994)(stating in addition that a local rule pertaining to summary judgment "is more than a technicality"). Therefore, no reasonable trier of fact could find other than that AA Sales is not owed commissions based on sales by Coni-Seal to Advance Auto Parts.

### 3. Illinois & Unicor Accounts

AA Sales argues that it is entitled to commissions from the Illinois and Unicor accounts for five years after the termination of the 1987 Contract. As noted above, the 1987 Contract was not amended to include the terms of the 1995 Agreement between Coni-Seal and AA Sales, which required that AA Sales would not make sales in Illinois or to Unicor for an "override" fee. As such, the only way that AA Sales would be entitled to commissions is if brake parts that were sold by Coni-Seal were as a result of AA Sales' efforts to solicit or maintain customers and sell brake parts. However, the undisputed evidence shows that AA Sales neither solicited nor sold products for Coni-Seal to customers in Illinois or to Unicor for over ten years. (SOF 67-76). In addition, even if AA Sales continued to solicit customers in Illinois or continued to solicit Unicor, and the solicitation resulted in sales, paragraph two in

the 1987 Contract expressly states that "[a]ll accounts must be approved by Coni-Seal" and paragraph three in the 1987 Contract states that commissions would be paid by Coni-Seal "on all products sold to approved accounts." (Compl. Ex. A). As such, any solicitation and sales to customers in Illinois or to Unicor would not qualify as "approved accounts" since AA Sales was not allowed to sell to those customers. Therefore, based on the above evidence, no reasonable trier of fact could find other than that AA Sales is not due commissions for sales to either Illinois customers or to Unicor.

### 4. 1995 Agreement

AA Sales argues that it is entitled to commissions based on the 1995 Agreement. As noted above, the 1987 Contract was not modified to include the terms of the 1995 Agreement, which required Coni-Seal to pay AA Sales an "override" fee in return for the promise by AA Sales that it would not solicit either Illinois customers or Unicor. As such, Coni-Seal is not required to pay any commission to AA Sales for the five-year period after the termination of the relationship between AA Sales and Coni-Seal, and the undisputed evidence shows that AA Sales was paid all commissions that it was due to receive prior to the termination of the relationship. Therefore, no reasonable jury could find that Coni-Seal breached the terms of either the 1987 Contract or the 1995 Agreement. Based on the foregoing analysis, we grant Coni-Seal's motion for summary judgment on AA Sales' breach of contract claim (Count I).

## II. ISRA Claim (Count II)

Coni-Seal argues that it is entitled to summary judgment on the ISRA claim. ISRA provides a cause of action under Illinois law for "[a]ll commissions due at the time of termination of a contract between a sales representative and principal . . . and commissions that become due after termination." 820 ILCS 120/2. Coni-Seal argues that neither it nor AA Sales are covered under ISRA or, alternatively, even if AA Sales' claim was covered by ISRA that Coni-Seal is entitled to summary judgment on AA Sales' ISRA claim because the facts of this case preclude recovery.

### A. Applicability of Sales Act

Coni-Seal argues that it cannot be liable under ISRA because it is not a "principal" as defined by the act and that AA Sales is not a "sales representative" as defined by the act. 820 ILCS 120/1. ISRA defines a "principal" to mean "sole proprietorship, partnership, corporation or other business entity" that "[m]anufactures, produces, imports, or distributes a product for sale; . . . [c]ontracts with a sales representative to solicit orders for the product; and . . . [c]ompensates the sales representative, in whole or in part, by commission." 820 ILCS 120/1(3). ISRA defines "sales representative" as "a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale or one

16

who qualifies as an employee. . . ." 820 ILCS 120/1(4). AA Sales contends that ISRA is applicable to its current claims.

In the instant action, the undisputed evidence shows that Coni-Seal is a "principal" and that AA Sales is a "sales representative" as defined by ISRA. 820 ILCS 120/1(3), (4). Coni-Seal manufactures parts for the automotive aftermarket, contracts with sales representatives to solicit orders by customers, and compensates those sales representatives for sales by commission, as evidenced by the 1987 Contract. In addition, AA Sales is a "sales representative" since the 1987 Contract called for AA Sales to solicit orders from approved accounts and for AA Sales to be paid commissions once it sold brake parts to customers. *See Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999)(stating that soliciting an agreement to purchase a product for which there was a contract to do so is "sufficient to fall within the definition of 'sales representative'" under ISRA)(quoting 820 ILCS 120/1). Therefore, based on the undisputed evidence, ISRA is applicable to the instant action.

### B. Violation of ISRA

AA Sales contends that Coni-Seal violated ISRA by not paying commissions that it was due to be paid upon termination of the 1987 Contract. ISRA provides that:

> A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales

representative, shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs.

820 ILCS 120/3. As noted above, AA Sales is not due any commissions from Coni-Seal. Therefore, we find as a matter of law that Coni-Seal did not violate ISRA and we grant summary judgment to Coni-Seal on AA Sales' ISRA claim (Count II).

III. Declaratory Judgment Claim (Count III)

AA Sales seeks in its complaint a declaratory judgment from this court finding, *inter alia*, that "AA Sales . . . is entitled to commissions on all accounts that had been previously called on and sold by AA Sales at the rate of six percent for the five year period set forth in the parties' written contract." (Compl. 10). Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Coni-Seal argues that it is entitled to summary judgment on AA Sales' declaratory judgment claim because AA Sales has no post-termination right to receive commissions on any of the accounts at issue. We agree. As stated above, based on the undisputed evidence, AA Sales is not owed any commissions by Coni-Seal and we grant Coni-Seal's motion for summary judgment on AA Sales' declaratory judgment claim (Count III).

## CONCLUSION

Based on the foregoing analysis, we grant Coni-Seal's motion for summary judgment in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 26, 2007